UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**SOFIA E. GALVAN DE VALENZUELA**                                              **PLAINTIFF**

**V.**                          **NO. 3:19CV00314 BSM-JTR**

**ANDREW SAUL,**
**Commissioner of Social Security Administration[1]**          **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I.  Introduction:

Plaintiff Sofia E. Galvan De Valenzuela, ("Valenzuela") applied for supplemental security income benefits on January 14, 2016, and for disability insurance benefits on February 3, 2016, alleging disability beginning on December 31, 2007. (Tr. at 19). After conducting a hearing, the Administrative Law Judge

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

("ALJ") denied her application. (Tr. at 35). The Appeals Council denied Valenzuela's request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Valenzuela has filed a Complaint seeking judicial review from this Court.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II. **The Commissioner's Decision:**

The ALJ found that Valenzuela had not engaged in substantial gainful activity since the alleged onset date of December 31, 2007. (Tr. at 22). At Step Two, the ALJ found that Valenzuela had the following severe impairments: migraine headaches, asthma, and obesity. *Id.*

After finding that Valenzuela's impairments did not meet or equal a listed impairment (Tr. at 25), the ALJ determined that Valenzuela had the residual functional capacity ("RFC") to perform work at the medium exertional level, except that: (1) she is limited to performing simple one-to-three step tasks requiring no more than two hours of concentration without a break; (2) she is limited to working in environments where changes are infrequent and gradually introduced with only occasional contact with supervisors, coworkers, and the general public. (Tr. at 27).

The ALJ found that Valenzuela was unable to perform any of her past relevant work. (Tr. at 34). At Step Five, the ALJ relied on the testimony of a Vocational

Expert ("VE") to find that, based on Valenzuela's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including work as industrial cleaner, hand packager, and laundry worker. (Tr. at 35). Thus, the ALJ found that Valenzuela was not disabled. *Id*.

### III.   Discussion:

#### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in

Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Valenzuela's Arguments on Appeal

Valenzuela contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that: (1) the ALJ failed to fully develop the record; (2) the ALJ did not properly assess Valenzuela's subjective complaints; (3) the ALJ erred at Step Two in finding fibromyalgia to be a non-severe impairment; and (4) the RFC did not fully incorporate her limitations. (Doc. No. 23 at iii). After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Valenzuela suffered from back pain, asthma, migraines, fibromyalgia, and anxiety and depression. However, objective testing revealed only mild-to-moderate

findings. Lumbar and cervical spine and hip x-rays were all unremarkable. (Tr. at 482-483). Straight-leg raise testing was negative and neurological exams were normal. (Tr. at 743, 977). Muscle tone and range of motion were within normal limits, as were her gait and station. (Tr. at 743, 959). Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Valenzuela did not report any back pain in February 2018. (Tr. at 1055, 1067).

Valenzuela's PCP treated back pain conservatively with medication and a referral to physical therapy. (Tr. at 710-713, 940). Valenzuela was discharged from physical therapy due to noncompliance. (Tr. at 710-715). A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) As well, she told her physical therapist that she was able to perform home exercises as recommended. (Tr. at 718). The evidence of back and neck impairments was benign.

As for asthma, Valenzuela had a normal pulmonary function test and her asthma was described as mild. (Tr. at 693-694, 1074-1078). Moreover, she continued to smoke every day in spite of a recommendation to quit by many of her doctors. (Tr. at 561, 665, 694-697). *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997)(the ALJ correctly discounted claimant's credibility when claimant failed to

5

stop smoking despite physician's orders). Doctors also recommended that she improve her diet, exercise, and lose weight. (Tr. at 507-511).

Migraines were a problem for Valenzuela but a brain MRI and CT scan were normal. (Tr. at 789, 823-827). Her neurologist noted that medication helped with migraines, and Valenzuela said that Topomax provided relief. (Tr. at 650, 823, 979). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Valenzuela said that she was having migraines only once or twice a month in 2016 and 2015. (Tr. at 511, 740). At the hearing, Valenzuela said she had 15 headaches a month (Tr. at 55), but she was only on a conservative medication maintenance plan and did not provide evidence of continuing migraine treatment appointments.

Valenzuela did not have the 11 of 18 trigger points required for a fibromyalgia diagnosis and her PCP said he did not think she had fibromyalgia in spite of her assertions that she did. (Tr. at 24, 937, 975-977). Cymbalta helped with chronic pain. (Tr. at 614). She complained of constant all over pain, but she could perform a variety of daily activities, which is inconsistent with disabling pain. She could walk for exercise, clean house, cook, read, sew, shop in stores, and take care of her dogs. (Tr. at 26, 56-58, 650). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). For a time during the relevant

time-period she was the sole caretaker of her 98-year-old grandmother. (Tr. at 30, 533). Thus, the Court concludes that the ALJ properly reviewed the fibromyalgia records and found that it was non-severe at Step Two.

Valenzuela alleged anxiety and depression that made it difficult to leave the house. She engaged in therapy and medication management with psychiatric professionals, but in general, at those visits, her mood was good, she was cooperative, she had good memory, and she had good insight and judgment. (Tr. at 615, 702, 752, 908, 1080). Mental status exams were grossly normal. *Id*. Valenzuela again was found to be non-compliant with therapy in 2013. (Tr. at 550). Moreover, Valenzuela cited to a variety of medications that improved sleep, depression, and anxiety. (Tr. at 366-371, 517). In June 2016, she had a negative depression screening. (Tr. at 908-909, 1094). In October 2017, her therapist praised her progress in therapy. *Id*. Her providers observed mostly situational stressors, and she was engaged in therapeutic tools to improve. (Tr. at 550-693, 1080-1129).

Valenzuela argues that the ALJ should have ordered an orthopedic consultative exam. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a Plaintiff has the burden of proving her disability; the ALJ does not have to play counsel for the Plaintiff. *Id*. The ALJ is required to recontact a treating or

consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). The records here consistently showed only mild orthopedic impairments, and the Disability Determination Services physicians were in agreement that Valenzuela could perform medium work. (Tr. at 82, 128). There was no conflict in the record that would require further development; additionally, twice at the hearing, Valenzuela's attorney said the record was complete. (Tr. at 47, 65). *See Onstand v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993)(while the ALJ has a duty to develop the record, Plaintiff's counsel failed to suggest that further evidence was needed); *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011)(the ALJ's duty to develop is not never-ending).

Furthermore, the ALJ properly evaluated Valenzuela subjective complaints. When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). An ALJ need not explicitly discuss each factor, and he may decline to credit a claimant's subjective complaints if the

evidence as a whole is inconsistent with the claimant's testimony. *Id*. The ALJ discussed Valenzuela's daily activities, her doctors' recommendations to quit smoking and to exercise, her positive response to medication, and the nature of her complaints of pain. (Tr. at 25-33). His analysis that her complaints were inconsistent with the record as a whole was complete.

Finally, for the reasons outlined above, the RFC for medium work with simple mental requirements incorporated Valenzuela's limitations. "The ALJ bears the primary responsibility for assessing a claimant's RFC – that is, what he or she can still do, in spite of severe impairments. The finding must be based on all relevant evidence in the record." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010)(citations omitted). The evidence in the record showed mild objective testing results with conservative treatment and positive response to medication. The RFC finding was well-supported.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision that Valenzuela was not disabled. The ALJ based his decision off of a fully developed record, he did not err at Step Two, he properly considered the subjective complaints, and the RFC incorporated all of Valenzuela's limitations.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that judgment be entered for the Defendant.

DATED this 6th day of October, 2020.

*/s/ J. Thomas Ray*
_____
UNITED STATES MAGISTRATE JUDGE